**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

**CHAKARLA M., O/B/O C.W.,**

                              **Plaintiff,**                              **6:22-CV-6081Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

**DECISION AND ORDER**

As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings

in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #13.

**BACKGROUND**

Plaintiff applied for supplemental security income ("SSI"), with the Social

Security Administration ("SSA"), on February 7, 2019, alleging disability on behalf of her

child, age 7, due to attention deficit hyperactivity disorder ("ADHD"). Dkt. #7, p.70.

On June 2, 2020, plaintiff and the child appeared with counsel and

testified at an administrative hearing conducted by telephone before Administrative Law

Judge ("ALJ"), Michael W. Devlin. Dkt. #7, pp.44-58. At the outset of the hearing, counsel advised the ALJ that he was "waiting on records from Exploration Elementary Charter School for Science and Technology." Dkt. #7, p.47. The ALJ advised that he would keep the record open for three weeks and assured plaintiff that counsel would be in touch if the records did not arrive as expected. Dkt. #7, pp.56-57.

Plaintiff testified that her son, age 8, was diagnosed with ADHD in November of 2019. Dkt. #7, p.48. He was prescribed two doses of medication daily, which helps him to be a little bit more focused, but he is still very talkative and "all over the place." Dkt. #7, p.49. He has an an Individualized Education Plan for his behavior because he is behind in reading and math. Dkt. #7, p.49. His grades had improved, but had dropped again since the beginning of the pandemic. Dkt. #7, p.51. He requires multiple reminders to complete his homework because he gets distracted very easily. Dkt. #7, p.52. He is unable to complete his chores on his own. Dkt. #7, p.53. He gets along well with his friends although he sometimes encroaches into their personal space. Dkt. #7, p.55.

The ALJ rendered a decision that plaintiff was not disabled on October 2, 2020. Dkt. #6, pp.24-30. The Appeals Council denied review on January 5, 2022. Dkt. #7, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on February 16, 2022. Dkt. #1.

-2-

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). So long as "substantial evidence supports the ALJ's decision, a court will not remand simply because the evidence also supports an alternate conclusion." *Keough o/b/o Jamt v. Comm'r of Soc. Sec.*, 18-CV-1065, 2020 WL 4504988, at *3 (W.D.N.Y. Aug. 5, 2020), *quoting Cartagena v. Comm'r of Soc. Sec.*, 18-CV-245, 2019 WL 4750425, at *4 (W.D.N.Y. Sept. 27, 2019).

An individual under the age of 18 will be considered disabled under the Social Security Act ("Act"), if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations and can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner must follow a three-step sequential evaluation to determine whether a child is disabled within the meaning of the Act. 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaging in substantial gainful activity. 20 C.F.R. § 416.924(a) & (b). If not, the ALJ proceeds to step two and determines whether the

child has an impairment or combination of impairments that is severe, *i.e.*, causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). If the ALJ finds a severe impairment or combination of impairments, the ALJ proceeds to step three and examines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the criteria of a listed impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 416.924(d).

To evaluate functional equivalence, the ALJ considers how the child functions in the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must cause marked limitations in two domains or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a). A child has a marked limitation when the impairment or combination of impairments interferes seriously with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926(e)(2)(i). A child has an extreme limitation when the impairment or combination of impairments interferes very seriously with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926(e)(3)(i).

In the instant case, the ALJ made the following findings with regard to the three-step sequential evaluation: (1) the child had not engaged in substantial gainful activity since the application date of February 7, 2019; (2) the child's ADHD constitutes

a severe impairment; and (3) the child's impairment did not meet or medically or functionally equal any listed impairment, and the child was not, therefore, disabled within the meaning of the SSA. Dkt. #7, pp.28-39. More specifically, the ALJ determined that the child exhibited: (1) less than marked limitation in acquiring and using information; (2) less than marked limitation in attending and completing tasks; (3) marked limitation in interacting and relating with others; (4) less than marked limitation in moving about and manipulating objects; (5) no limitation in ability to care for self; and (6) no limitation in health and physical well-being. Dkt.#7, pp.34-38.

Plaintiff argues that the Appeals Council failed to review a Teacher Questionnaire dated October 20, 2020. Dkt. #8-1, pp.7-10. As a result of the omission of this document from the administrative record and absent any other educational record or persuasive opinion evidence from a consultative examination, plaintiff argues that the ALJ relied upon an incomplete record and lacked sufficient evidence to assess the child's functional capacity. Dkt. #8-1, pp.11-14.

The Commissioner argues that the ALJ discharged his duty to develop the record by holding the record open and relying upon counsel to obtain outstanding records. Dkt. #9-1, pp.6-7. The Commissioner also argues that plaintiff has failed to demonstrate that such records would have supported the child's claim of disability. Dkt. #9-1, p.8. The Commissioner argues that the record of evidence was sufficient to adjudicate plaintiff's claim and that the the ALJ's decision is supported by substantial evidence. Dkt. #9-1, pp.8-12. The Commissioner argues that the Teacher

Questionnaire does not support a determination that the child exhibited a marked or extreme limitation in any domain. Dkt. #9-1, pp.13-17.

Sufficiency of the Record

Because "Social Security proceedings are inquisitorial rather than adversarial," the ALJ has an affirmative duty to investigate the facts and develop the record regardless of whether the claimant is represented by counsel. *DeGraff v. Comm'r of Soc. Sec*., 850 Fed. App'x 130, 131 (2d Cir. 2021), *quoting Sims v. Apfel*, 530 U.S. 103, 110-22 (2000). This obligation encompasses not only the duty to obtain medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity. *Shannon H. v. Comm'r of Soc. Sec*., 20-CV-1631, 2022 WL 1793198, at *4 (W.D.N.Y. June 2, 2022). However, the ALJ's duty to develop the record is triggered only if the evidence before the ALJ is inadequate to determine whether the claimant is disabled. *Id.* at *5. The ALJ is not obligated to seek additional medical records where the administrative record is sufficient for the ALJ to render a disability determination. *Johnson v. Comm'r of Soc. Sec*., 16-CV-631, 2018 WL 1428251, at *5 (W.D.N.Y. Mar. 22, 2018).

Where the claimant is represented by counsel, the ALJ may satisfy the duty to develop the record by relying on counsel to obtain additional documentation. *Ballantyne T. v. Comm'r of Soc. Sec*., 23-CV-11182, 2025 WL 551820, at *8 (S.D.N.Y. Feb. 19, 2025) (collecting cases). Where the ALJ holds the record open for counsel to

obtain additional records, but the claimant fails to provide supplemental evidence or seek additional assistance in obtaining such evidence, the ALJ has met his obligations to develop the administrative record. *Joseph B. v. Comm'r of Soc. Sec.*, 23-CV-652, 2024 WL 4217371, at *6 (N.D.N.Y. Aug. 29, 2024) (collecting cases). "Ultimately, it is the claimant's duty and burden to prove that they are disabled in the period for which benefits are sought." *Ballantyne T. v.,* 2025 WL 551820, at *8; *See also Linda P. v. Comm'r of Soc. Sec*., 21-CV-625, 2024 WL 1257410, at *10 (W.D.N.Y. Mar. 25, 2024) (recognizing that counsel "has an affirmative duty to provide competent assistance to the claimant, including acting with reasonable promptness to help obtain information or evidence that the claimant must submit.") (*citing* SSR 17-4p, 2017 WL 4736984).

       The Court is satisfied that the ALJ discharged his duty to develop the record by relying upon counsel to obtain outstanding records. The Court has no doubt that plaintiff's experienced and reputable counsel would have requested additional time or assistance from the ALJ to obtain the child's school records if such records would have supported the child's claim of disability and notes that counsel did, in fact, eventually submit a Teacher Questionnaire for consideration. Although that evidence was submitted subsequent to the ALJ's decision, the Court finds the record of evidence before the ALJ sufficient to support the ALJ's determination that the child was not disabled.

       The child's school noted in its 2018-2019 Section 504 Accommodation Plan, dated February 5, 2019, that the child fidgets, causing distraction to peers, and

"often gets explosive by screaming, stomping his feet, or elopement/pacing if he is off-task[], called out, or feels shamed by his actions that are outside of classroom expectations." Dkt. #7, p.198. The Section 504 Accommodation Plan provided the child with preferential seating, a smile chart, and positive reinforcement, as well as the option to use a privacy board and fidget device, access a cool down area and to participate in a weekly boys support group and crisis counseling as needed. Dkt. #7, pp.198-199.

The child was also observed by his pediatrician to be hyperactive, fidgety, talkative, attention seeking and impulsive. Dkt. #7, pp.295 & 301. However, the child was reported to be "doing much better" on medication. Dkt. #7, pp.295, 301, 305. The child's parent reported that the child was "doing well" and that "the medication is well tolerated and effective" as of April 10, 2019. Dkt. #7, p.307. In a function report completed May 7, 2019, the parent reported that the child "[u]sed to have difficulty with teacher and focusing in school until he got the medication." Dtk. #7, p.182.

Upon consultative psychiatric examination by Stephen Farmer, Psy.D., on June 11, 2019, the child's parent reported that the child was in regular education and that the child's academic performance was "pretty good." Dkt. #7, p.265. The child's parent also reported good relationships with parents and other adults and authority figures, as well as with peers. Dkt. #7, p.265. The child's parent reported that the child often fidgets or squirms and has difficulty sustaining attention in tasks or play, but that the ADHD medication worked very well in mitigating the child's ADHD symptoms. Dkt. #7, p.265.

Dr. Farmer observed the child to be friendly and cooperative with an age appropriate manner of relating and social skills. Dkt. #7, p.266. The child's attention and concentration was observed to be intact and age appropriate; the child was able to perform simple counting and calculations as well as all serial threes from 20. Dkt. #7, p.266. The child demonstrated intact and age appropriate recent and remote memory skills, recalling 3/3 objects immediately and 2/3 after a delay, as well as recall of 6 digits forward and 3 digits backward. Dkt. #7, p.266. The child's insight and judgment was observed to be age appropriate and the child's activities of daily living were reported to be age appropriate. Dkt. #7, p.266.

Dr. Farmer recommended that the child continue with ADHD medication for continued stabilizationof ADHD symptoms but reported

> No evidence of limitation for all medical source statements. Results of the examination do not appear to be consistent with any psychiatric, substance abuse, or cognitive problems that would significantly interfere with the claimant's ability to function on a daily basis.

Dkt. #7, p.267. The ALJ did not find Dr. Farmer's opinion persuasive because his assessment that the child did not have a severe mental impairment was inconsistent with a diagnosis of ADHD and reports of fidgeting and behavior problems. Dkt. #7, p.34.

Upon State Agency Review, K. Prowda, M.D., opined that the child's ADHD is severe, but did not meet, medically equal or functionally equal the listings. Dkt. #7, p.64. More specifically, Dr. Prowda opined that the child demonstrated a marked limitation in interacting and relating with others; less than marked limitations in the

domains of acquiring and using information, attending and completing tasks, and moving about and manipulating objects and no limitation in the domains of caring for one self and health and physical well-being. Dkt. #7, pp.63-64. Upon reconsideration, O. Fassler, Ph.D., concurred with Dr. Prowda's opinion. Dkt. #7, pp. 76-77. The ALJ found these opinions persuasive because they were consistent with the evidence of record. Dkt. #7, p.34.

The child's parent continued to report to the pediatrician that she had "no concerns" and that the child was "doing well" and was "more focused on the meds at school and home" on August 15, 2019. Dkt. #7, p.310. The pediatrician opined that the child's symptoms were well controlled and that the child was "in remission" on medication. Dkt. #7, p.477. On November 13, 2019, the child's parent reported that the Committee on Special Education reported that the child was "doing better than last year." Dkt. #7, p.491.

The record set forth above is sufficient to support the ALJ's assessment of the child's functioning across the relevant domains and provide substantial evidence for the ALJ's determination that the child was not disabled due to learning and/or behavioral issues.

Teacher Questionnaire

Social Security regulations allow a claimant to submit additional evidence to the Appeals Council in support of a Request for Review, and the Appeals Council

must accept the evidence as long as it is new, material, and relates to the period on or before the date of the ALJ's decision. *Scott v. Comm'r of Soc. Sec.*, 23-CV-243, 2025 WL 1713260, at *4 (W.D.N.Y. June 18, 2025). To be considered "new," the proffered evidence cannot be cumulative of what is already in the record. *Id.* "Evidence is material if it is relevant to the claimant's condition during the time period for which benefits were denied and there is a reasonable probability that it would have influenced the Commissioner to decide the claimant's application differently." *Id.* (internal quotation omitted). Thus, "the question for the Court is whether substantial evidence supports the ALJ's decision, even considering the additional evidence." *Elaine C. v. Comm'r of Soc. Sec.*, 2023 WL 7280720, at *10 (S.D.N.Y. Nov. 3, 2023). Stated another way, the relevant question is whether the ALJ's decision is contrary to the weight of the evidence when the new evidence is included in the record. *Rutkowski v. Astrue*, 368 Fed. App'x 226, 229 (2d Cir. 2010).

Paula Incardona, the child's classroom teacher for the year, completed the Teacher Questionnaire on October 20, 2020. Dtk. #8-2. The teacher reported that the child was below current instructional levels for reading, math and written language. Dkt. #8-2, p.3. When provided with a check box form to assess whether the child demonstrated no problem, a slight problem, an obvious problem, a serious problem, or a very serious problem with respect to various tasks as compared to the functioning of a child of similar age without impairments, the teacher reported no more than an obvious problem with respect to the child's ability to:

- understand and participate in class discussions;

- provide organized oral explanations and adequate descriptions; and

- express ideas in written form,

with no more than a slight problem:

- comprehending oral instructions;

- understanding school and content vocabulary;

-  reading and comprehending written material;

- comprehending and doing math problems;

- learning new material;

- recalling and applying previously learned material; and

- applying problem-solving skills in class discussions.

Dkt. #7, p.4. In the domain of attending and completing tasks, the teacher reported an obvious, daily problem:

- paying attention when spoken to directly;

- focusing long enough to fininsh assigned activity or task;

- refocusing to task when necessary;

- carrying out multi-step instructions;

- organizing own things or school materials;

- completing class/homework assignments;

- completing work accurately without careless mistakes;

- working without distracting self or others;

- working at reasonable pace/finishing on time,

with no more than a slight problem:

- carrying out single step instructions; and

- changing from one activity to another without being disruptive.

Dkt. #8-2, p.5. The teacher reported no problems in the domain of interacting and

relating with others. Dkt. #8-2, p.6. In the domain of moving about and manipulating

objects, the teacher noted that the child needed reminders about his personal space as

well as his peers' personal space, and reminders to use calming strategies, but

otherwise reported no more than a slight problem for relevant tasks in this domain. Dkt.

#8-2, p.7. In the domain of caring for one self, the teacher noted that the child

> does a good job with caring for himself. He remembers to take his medication. He is attentive to his daily needs. He often needs reminders when there are several tasks to complete at once.

Dkt. #8-2, p.8. The teacher otherwise reported no more than a slight problem for

relevant tasks in this domain. Dkt. #8-2, p.9. Overall, the teacher noted that the child is

more alert and more able to focus on completing tasks on his medication. Dkt. #8-2,

p.9.

While it is unclear whether the Appeals Council actually even received the

completed Teacher Questionnaire,[1] or if it did, why the Teacher Questionnaire was not

considered by the Appeals Council, the Court is confident that consideration of the

Teacher Questionnaire does not alter the outcome of this application because it does

---

[1] The Administrative Record contains a fax cover sheet dated October 20, 2020 from plaintiff's counsel referencing a Teacher Questionnaire from Exploration Elementary Charter School for Science, and the Administrative Record catalogs the Teacher Questionnaire as Medical Evidence of Record, but the Teacher Questionnaire within the Administrative Record is blank. Dkt. #7, pp.16-24.

not suggest that the child had greater limitations than determined by the ALJ. *See Taneisha R. v. Comm'r of Soc. Sec.*, 23-CV-98, 2024 WL 1151764, at *5 (W.D.N.Y. March 18, 2024) (collecting cases rejecting argument that assessment of "a serious problem" is inconsistent with a "less than marked" determination by the ALJ).  To the contrary, the Teacher Questionnaire undermines the ALJ's determination that the child had a marked limitation in the domain of interacting and relating to others by opining that the child had no problems in this domain. Dkt. #8-2, p.6. Because the Teacher Questionnaire does not support greater limitations than were assessed by the ALJ in any of the functional equivalence domains, any error that could be attributed to the Commissioner with respect to its failure to consider this evidence is harmless.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #8), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #9), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:  Buffalo, New York**
           **September 30, 2025**

                                    S/ H. Kenneth Schroeder, Jr.
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**

-14-